# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**DEVONTE RODNEY BAKER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2025-1240

[April 29, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Michael Carlton Heisey, Judge; L.T. Case No. 562024CF001806AXXXSL.

Daniel Eisinger, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Joseph Mollica, Assistant Attorney General, West Palm Beach, for appellee.

SHEPHERD, J.

Appellant, Devonte Baker, challenges his convictions for four counts of criminal mischief and four counts of armed trespass. Baker argues, and we agree, that the trial court erred in denying Baker's motion for judgment of acquittal as to counts 1 and 2 (criminal mischief and armed trespass) related to the first incident involving the primary victim. We also agree with Baker that counts 4 and 6 (armed trespass), related to the second and third incidents involving the primary victim, should have been reduced to trespass, as the State failed to establish Baker was armed when he trespassed on the primary victim's property. Finally, while the trial court entered a judgment of acquittal regarding an incident involving a different victim in counts 8 and 9, judgment was erroneously entered as to those counts; those judgments must be vacated on remand. Two criminal mischief convictions (counts 3 and 5) and the stalking conviction (count 7) are not challenged on appeal.

## Background

The State charged Baker with criminal mischief (counts 1, 3, 5, 8), armed trespass on land (counts 2, 4, 6, 8), and stalking (count 7) related to the primary victim. During the State's case, the primary victim testified that one morning, he discovered all four of his vehicle's tires had been slashed. The vehicle had been parked in the victim's driveway and the tires were ten-ply, heavy-duty tires that the victim testified a nail or screw would not puncture sufficiently to cause a flat tire. After discovering the slashed tires, the victim reviewed photographs from his security camera, which showed a "silhouette" running away. The victim testified that he did not know who caused the damage to his tires. However, he had a "hunch" it might be Baker, who had been the victim's customer, because of a phone call which Baker had made to the victim several weeks prior. In that phone call, Baker stated that he knew who the victim was and to "either give the money back or I'm gonna get mines."

One week following the first tire-slashing incident, the victim discovered that all four of his newly-replaced tires were slashed. The victim reviewed his security camera footage and saw a vehicle similar to the one owned by Baker's mother drive by the victim's house. The security camera footage, admitted into evidence, showed Baker with an item wrapped in a towel in one hand make a thrusting motion with that hand toward the victim's tires. The victim testified that he did not know what the towel covered. A law enforcement officer who responded to the second incident testified that "on each of the tires [he observed] a toolmark that [ ] appeared to be consistent with some type of knife or cutting instrument [ ] approximately an inch to an inch and a half long and each of the tires had been completely flattened."

The officer also reviewed the video footage from the victim's security system and testified that he identified that "some type of cutting instrument" was used based on the marks on the tires and "some type of a - - kind of a thrusting type motion as if he was trying to hook something into the tire." The officer was unable to identify with any specificity what the object was that had deflated the tires. The officer stated that "[i]t was very difficult to see what was going on with his hands just due to the time of day and the overall quality of the video."

On a third occasion, approximately one week after the second incident, the victim saw Baker walking behind the victim's vehicle and, immediately thereafter, the victim noticed that three of his tires had been slashed again. The victim estimated that the marks on his tires were "[m]aybe about an inch and a half or so" and appeared to be "[l]ike a slash, not a stab." The

sole of Baker's shoe was later found on the property adjacent to the victim's home.

After the State rested its case, Baker moved for judgment of acquittal on counts 1 and 2, arguing that his identity could not be established with respect to the first incident, where the victim's testimony was that he saw "a silhouette" running away. Baker also argued that, as to the armed trespass charges for all three incidents relating to the primary victim (counts 2, 4 and 6), the object used to deflate the tires was not observed or described, and no evidence existed to show that the object was a "dangerous weapon."

The State responded that sufficient circumstantial evidence existed that Baker was guilty of the crimes charged for the first incident involving the primary victim (counts 1 and 2), because the next two incidents (counts 3 through 6) were committed in the same manner and Baker was seen on video committing these crimes. The State also argued circumstantial evidence existed that the object used in all three incidents to damage the tires was a dangerous weapon because the victim testified that the tires were ten-ply tires that would withstand damage from a nail or screw; therefore, a sharp object must have been used to deflate the tires.

The trial court granted the motion for judgment of acquittal as to counts 1, 3, and 5, insofar as it reduced counts 1, 3, and 5 from third-degree felonies to first-degree misdemeanors, and denied the motion for judgment of acquittal as to counts 2, 4, 6 (armed trespass counts), and 7 (stalking count).[1] A jury then found Baker guilty of counts 1 through 7 with the trial court's modifications.

## Discussion

"A motion for judgment of acquittal is reviewed de novo on appeal." *Lewis v. State*, 50 So. 3d 86, 87 (Fla. 4th DCA 2010). It is axiomatic that the State must prove every element of a crime beyond a reasonable doubt. *Ponsell v. State*, 393 So. 2d 635, 636–37 (Fla. 4th DCA 1981).

Here, we are presented with whether sufficient evidence established Baker's identity in counts 1 and 2, and whether sufficient evidence established that he was armed. "It is an elementary but fundamental principle of criminal law that the prosecution, in presenting a prima facie case, must establish beyond a reasonable doubt, the identity of the

---

[1] The trial court granted the motion for judgment of acquittal as to counts 8 and 9, which related to a different victim.

3

accused as perpetrator of the charged offense. See cases cited at 1 Wharton's Criminal Evidence, [§] 16, note 64 (13th ed.)." *Id.* at 636. Failure to prove each element means a judgment of acquittal should be granted. *Ponsell*, 393 So. 2d at 636–37.

### Insufficient Evidence of Identification, Counts 1 and 2

Baker argues that the State's evidence was insufficient to sustain the convictions for counts 1 and 2. We agree. Although the State argues that it is permissible to prove identity by circumstantial evidence, "[s]uspicions alone cannot satisfy the State's burden of proving guilt beyond a reasonable doubt . . . ." *Miranda v. State*, 113 So. 3d 51, 56 (Fla. 2d DCA 2013) (quoting *Ballard v. State*, 923 So. 2d 475, 482 (Fla. 2006)). The victim's testimony that he saw "a silhouette" and had a "hunch" that it was Baker is more akin to "suspicions alone" than competent substantial evidence. We reverse the convictions on counts 1 and 2 and remand for the trial court to vacate those convictions.

### Insufficient Evidence of Armed Trespass, Counts 4 and 6

Baker also argues the trial court erred in denying his motion for judgment of acquittal as to the armed trespass counts, because no substantial, competent evidence existed that the object in Baker's hand was a dangerous weapon. No witness saw or identified the object in Baker's hand. Without evidence of what the object was, Baker argues, no evidence existed that the object was (1) actually used in a manner likely to cause death or great bodily harm or (2) designed or constructed to cause death or great bodily harm if used in its ordinary or usual manner.

The State responds that the object was a dangerous weapon, as evidenced by Baker's need to wrap the object in a cloth. The State alternatively argues that it presented competent substantial evidence that Baker committed an act using a sharp object which threatened the physical safety of the victims with at least great bodily harm, which transformed the object into a dangerous weapon.

Section 810.09(2)(c), Florida Statutes (2023), provides: "If the offender is armed with a firearm or other dangerous weapon during the commission of the offense of trespass on property other than a structure or conveyance, he or she is guilty of a felony of the third degree . . . ." A "dangerous weapon" is "any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm." *Saint-Fort v. State*, 222 So. 3d 624, 625 (Fla. 4th DCA 2017) (quoting Fla. Std. Jury Instr. (Crim.) 13.4). "Additionally, because our courts have viewed the terms

'dangerous weapon' and 'deadly weapon' as having the same meaning . . . opinions involving the classification of a weapon as a deadly weapon provide guidance." *Saint-Fort*, 222 So. 3d at 625 (citations omitted). Whether "an object is a deadly weapon is a question of fact to be determined by the jury from the evidence, taking into consideration its size, shape and material and the manner in which it was used or was capable of being used." *Simmons v. State*, 780 So. 2d 263, 265 (Fla. 4th DCA 2001) (quoting *Duba v. State*, 446 So. 2d 1167, 1169 (Fla. 5th DCA 1984)). The legislature has excluded a common pocketknife, plastic knife, and blunt-bladed table knife from the definition of "deadly weapon." *See* § 790.001(20), Fla. Stat. (2023).

We agree with Baker that the State's evidence regarding the object used to cut or puncture the tires was insufficient to support the charge of armed trespass. No witness observed or could identify the object Baker used to deflate the tires. The limited testimony about the manner of use was the officer's testimony that he saw Baker make "some type of a - - kind of a thrusting type motion as if he was trying to hook something into the tire." No testimony established that Baker used the object in a way that would cause great bodily harm. Further, the definition of "dangerous weapon" excludes certain weapons such as a common pocketknife, and no evidence established that the object was not a common pocketknife. Although whether "an object is a deadly weapon is a question of fact to be determined by the jury from the evidence, taking into consideration its size, shape and material and the manner in which it was used or was capable of being used," here, insufficient evidence existed to allow that question to go to the jury. Because the State did not meet its burden to show that the object used was capable of causing death or great bodily harm, and was not a pocketknife or other excluded weapon, we reverse the convictions for armed trespass on counts 4 and 6, and remand with instructions to enter a judgment reflecting convictions for the lesser-included offense of trespass on counts 4 and 6.

### Counts 8 and 9 Mistakenly Included in Judgment

Baker also argues that the trial court erroneously included counts 8 and 9 on the judgment. We agree. The trial court granted Baker's motion for judgment of acquittal on counts 8 and 9, and mistakenly included those counts on the judgment. We remand for the trial court to enter an amended judgment that omits counts 8 and 9.

In conclusion, we reverse the convictions on counts 1 and 2, and remand for the trial court to vacate those convictions. We also reverse the convictions for armed trespass on counts 4 and 6, and remand for the trial

5

court to enter judgment for trespass on those counts. Finally, we remand for the trial court to delete the judgment for counts 8 and 9. We affirm the convictions for counts 3, 5 and 7. The trial court shall expeditiously conduct a resentencing during which Baker shall be present, either in-person or remotely.

*Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.*

LEVINE and FORST, JJ., concur.

\*   \*   \*

**Not final until disposition of timely-filed motion for rehearing.**